UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

VINCENT NOCERA,

                Plaintiff,

       -against-

ANDREW M. SAUL,[1]
Commissioner of Social Security,

                Defendant.
-----------------------------------------------------------------X

**OPINION AND ORDER**

18 Civ. 5080 (JCM)

      Plaintiff Vincent Nocera ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner"), which denied Plaintiff's application for disability insurance benefits, finding him not disabled within the meaning of the Social Security Act (the "Act").[2] (Docket No. 1). Currently before this Court are (1) Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docket No. 20-1), and (2) the Commissioner's cross-motion for judgment on the pleadings, (Docket No. 23). For the reasons set forth herein, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**I. BACKGROUND**

      Plaintiff was born on November 17, 1964. (R.[3] 129). On August 7, 2015, Plaintiff applied for disability insurance benefits, alleging that he became disabled that month. (R. 16,

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted for former Acting Commissioner Nancy Berryhill as the Defendant in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] This action is before the Court for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 14).

[3] Refers to the certified administrative record of proceedings relating to Plaintiff's application for social security benefits, filed in this action on September 27, 2018. (Docket No. 15). All page number citations to the certified administrative record refer to the page number assigned by the SSA.

227). The SSA denied the claim on October 14, 2015, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 139, 144). Plaintiff appeared before ALJ Dennis Katz on June 8, 2017. (R. 97). At the hearing, Plaintiff amended his onset date to November 20, 2016 because he had been engaged in substantial gainful activity prior to that point in time. (R. 16). On June 14, 2017, the ALJ issued a decision finding that Plaintiff was not disabled and therefore not entitled to disability insurance benefits. (R. 16-27). The Appeals Council subsequently denied Plaintiff's request for review on April 11, 2018, and the decision of the ALJ became the Commissioner's final decision. (R. 1).

**A. Medical Treatment**

On February 26, 2003, Plaintiff had an intake assessment at St. Joseph's Mental Health Clinic after being discharged from inpatient treatment on February 13, 2003. (R. 310). Plaintiff's friend told him to see a psychiatrist after he reported hearing voices. (R. 310). Prior to attending inpatient treatment, Plaintiff was "having a mental relapse," but his current symptoms were "somewhat stable." (R. 310).

A letter from Dr. Jelena Veselinovic, dated October 22, 2015, stated that Plaintiff was a patient at St. Joseph's Behavioral Health Clinic since 2003 and was under Dr. Veselinovic's psychiatric care since August of 2014. (R. 305). Dr. Veselinovic indicated that Plaintiff was diagnosed with bipolar disorder and had a history of psychiatric hospitalizations, although he had not been hospitalized within the past four years. (R. 305). She prescribed Plaintiff Lithium, Haldol, Cogentin and Seroquel for his condition. (R. 305, 311).

On May 20, 2015, Dr. Veselinovic stated that Plaintiff was not at risk of endangering himself or others and was not at risk for rehospitalization, but he needed ongoing treatment. (R. 313). At a July 30, 2015 appointment, Plaintiff denied changes in his functioning and reported

2

adequate sleep, appetite and energy level. (R. 309). Dr. Veselinovic indicated that Plaintiff was compliant with his medication and he was not suffering from any adverse reactions. (R. 309). Plaintiff appeared well groomed and maintained good eye contact. (R. 309). He had a full and stable affect, goal directed thought process, and no auditory or visual hallucinations or delusions. (R. 309). On August 14, 2015, Dr. Veselinovic reported that Plaintiff was 100% compliant with his medication and had adequate sleep, appetite and energy level. (R. 314). She recommended follow-up appointments every two months. (R. 314). At a September 25, 2015 appointment, Plaintiff's mental status examination remained unchanged. (R. 308).

Plaintiff began seeing Celina Duran, a social worker, at St. Joseph's Behavioral Health Clinic in October of 2015. (R. 306). At his October 9, 2015 appointment, Ms. Duran found that Plaintiff's affect and mood were within normal limits, his speech was fair, and he had no suicidal or homicidal ideation. (R. 307). Ms. Duran provided a letter indicating that Plaintiff saw a psychiatrist and social worker at the clinic every two months. (R. 306-07).

**B. Medical Opinion from Plaintiff's Treating Psychiatrist**

Dr. Veselinovic completed a mental residual functional capacity ("RFC") assessment on November 20, 2015. (R. 316). According to Dr. Veselinovic, Plaintiff was markedly limited in his ability to remember locations and work-like procedures, understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without supervision, respond appropriately to changes in a work setting, set realistic goals and make plans independently of others. (R. 316-17). She opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out short and simple instructions, work in coordination with others, ask simple questions, accept instructions, maintain socially appropriate behavior, and

3

travel to unfamiliar places or use public transportation. (R. 316-17). However, Plaintiff did not have significant limitations in his ability to interact appropriately with the general public, get along with coworkers, or be aware of normal hazards. (R. 317).

Dr. Veselinovic explained that Plaintiff carried the diagnosis of bipolar I disorder with his most recent episode being hypomanic with psychotic features. (R. 319). Plaintiff had at least five past psychiatric hospitalizations. (R. 319). He was unstable and had racing thoughts, pressured speech, anxiety, insomnia, paranoid delusional thinking and behavior, and a labile mood. (R. 319). Plaintiff also had a remote history of substance abuse, although he was sober and abstinent for the past 15 years. (R. 319). According to Dr. Veselinovic, Plaintiff reported tiredness, poor concentration, inability to complete tasks and episodes of auditory hallucinations. (R. 319). Dr. Veselinovic concluded that Plaintiff suffered from a significant decline in functioning during the last several months and required ongoing support from his family and friends. (R. 319).

Dr. Veselinovic completed a psychiatric functional assessment on May 11, 2017. (R. 343). She indicated that Plaintiff still suffered from bipolar I disorder and that she treated Plaintiff 1 to 4 times per month. (R. 343). According to Dr. Veselinovic, Plaintiff's prognosis was poor, and he required lifelong treatment for his condition. (R. 343). Dr. Veselinovic opined that Plaintiff had extreme limitations understanding and learning terms, instructions and procedures, describing work activities, recognizing mistakes, identifying and solving problems, using reason and judgment to make work-related decisions, understanding and responding to social cues, responding appropriately to requests from coworkers or supervisors, cooperating and handling conflict with others, keeping social interactions free of excessive irritability, sustaining an ordinary routine without special supervision, and performing at a consistent pace without

4

interruption from symptoms. (R. 344-45). Plaintiff had marked limitations asking simple questions, answering questions, understanding and remembering short and simple instructions, sequencing multi-step activities, stating his point of view, initiating or sustaining conversation, getting along with coworkers, completing tasks in a timely manner, maintaining attention for two-hour segments, ignoring distractions, coordinating with others, and staying on task. (R. 344-45). Plaintiff had moderate limitations remembering work-like procedures and carrying out very short and simple oral instructions. (R. 344). Dr. Veselinovic indicated that Plaintiff would be absent from work more than 4 days per month and late to work more than 4 days per month. (R. 346). She elaborated that Plaintiff had a "severe, persistent mental illness" with a history of hospitalizations and that he was easily frustrated even with a part-time job. (R. 346). Dr. Veselinovic stated that Plaintiff required ongoing support to maintain his activities of daily living and compliance with his medication because his symptoms were "chronic and persistent." (R. 347-48).

## C. Medical Opinions from Consultative Physicians

### 1. Dr. Melissa Antiaris, Psy.D.

Dr. Melissa Antiaris, a psychologist, conducted a psychiatric evaluation of Plaintiff on September 28, 2015. (R. 298). She reported that Plaintiff was a 50-year old male who took the bus to arrive at his evaluation. (R. 298). Plaintiff lived in a sober house for 15 years and earned his GED online approximately three years prior. (R. 298). Plaintiff had difficulty with his classes and he had difficulty understanding the paperwork he had to fill out. (R. 298). Plaintiff was employed part-time as a porter at ShopRite, where he worked for 10 years. (R. 298).

Plaintiff indicated that he was diagnosed with bipolar disorder 15 years ago. (R. 298). He was hospitalized in 2012 at St. Joseph's Hospital and had been in and out of psychiatric wards. (R. 298). He stated that he saw a psychiatrist on a monthly basis and began seeing a new

5

therapist on a weekly basis. (R. 298). Plaintiff reported being able to dress, bathe and groom himself three to four times a week. (R. 300). He could cook with difficulty, complete light cleaning and laundry, shop, and manage his funds. (R. 300). Plaintiff did not drive, but he could take public transportation. (R. 300).

According to Plaintiff, he still occasionally experienced auditory hallucinations and heard a woman's voice. (R. 299). Sometimes he heard her say "Leave him alone" while other times he could not understand what she said. (R. 299). Plaintiff reported that Haldol "slowed down" the voices. (R. 299). Plaintiff also reported occasional visual hallucinations and stated that he sometimes saw ghosts. (R. 299). Plaintiff stated that he began using alcohol in 1977 and started using marijuana, cocaine, heroin and PCP in 1980. (R. 299). He stopped using alcohol and drugs in 2000 and attended a detox rehabilitation program. (R. 299). Plaintiff took Haldol, Seroquel, Benztropine and Lithium for his conditions. (R. 298). Plaintiff told Dr. Antiaris that he slept well as long as he took his medications. (R. 298). He was unsure if he was depressed, but he sometimes felt sad. (R. 298). Plaintiff denied suicidal or homicidal ideation and panic attacks. (R. 298-99).

Dr. Antiaris conducted a mental status examination and observed that Plaintiff appeared his stated age, was dressed appropriately, was well-groomed and maintained appropriate posture and eye contact. (R. 299). His thought process was coherent and goal-oriented with no evidence of hallucinations, delusions or paranoia. (R. 300). She found that Plaintiff's attention, concentration, and memory skills were mildly impaired due to limited intellectual functioning. (R. 300). Plaintiff could complete simple calculations but he had difficulty with serial 3s. (R. 300). He recalled 3 out of 3 objects immediately and 2 after a delay. (R. 300). He could recall 5

digits forward, but none backward. (R. 300). Dr. Antiaris found Plaintiff's insight limited and judgment poor. (R. 300).

Dr. Antiaris diagnosed Plaintiff with schizoaffective disorder, alcohol use disorder in full sustained remission, cannabis use disorder in full sustained remission, opioid use disorder in full sustained remission, cocaine use disorder in full sustained remission, and hallucinogenic use disorder in full sustained remission. (R. 301). She opined that Plaintiff was mildly limited in his ability to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and make appropriate decisions and relate adequately with others. (R. 301). Plaintiff was moderately limited in his ability to learn new tasks, perform complex tasks independently, and appropriately deal with stress. (R. 301). She concluded that Plaintiff's psychiatric issues may significantly interfere with his ability to function on a daily basis. (R. 301).

Dr. Antiaris performed a second consultative psychiatric evaluation on April 27, 2017. (R. 321). Plaintiff stated that he worked 12 hours a week as a maintenance worker and that he continued to see a therapist and psychiatrist once a month. (R. 321). Plaintiff reported difficulty falling asleep and a "so-so" appetite. (R. 321). He denied any depressive symptoms but indicated that he was suicidal in the past due to substance use. (R. 321). Plaintiff also reported that he had a gambling problem and became very anxious because he wanted to gamble, but knew that he could not do so. (R. 321). Plaintiff also indicated that he sometimes felt hyper and did not know "what the problem is." (R. 321). According to Plaintiff, he began experiencing auditory hallucinations four years ago and that the medications helped. (R. 322). Plaintiff reported being able to dress, bathe and groom himself. (R. 323). He could manage his funds,

take the bus, do laundry and shop as needed. (R. 323). Plaintiff worked part-time during the day and attended Alcoholics Anonymous either daily or every other day. (R. 323).

Dr. Antiaris conducted a mental status examination and found that Plaintiff was well groomed, appeared his stated age, and maintained normal eye contact. (R. 322). Plaintiff's speech was somewhat slurred, but clear. (R. 322). His thought process was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. (R. 322). Dr. Antiaris found that Plaintiff's attention, concentration and memory skills were mildly impaired due to limited intellectual functioning. (R. 323). Plaintiff's insight was fair, his judgment was poor and his cognitive functioning was borderline. (R. 323).

Dr. Antiaris concluded that Plaintiff did not have any limitations in his ability to understand, remember and apply simple directions and instructions. (R. 323-24). He was mildly limited in his ability to use reason and judgment to make work related decisions, interact adequately with supervisors, coworkers and the public, and maintain personal hygiene and appropriate attire. (R. 324). Plaintiff had moderate limitations in his ability to understand, remember and apply complex instructions. (R. 324). He was markedly limited in his ability to regulate emotions, control behavior, and maintain well-being.(R. 324). Dr. Antiaris opined that Plaintiff's difficulties were caused by lack of motivation and could significantly interfere with his ability to function on a daily basis. (R. 324).

**2. Dr. R. Nobel, Ph.D.**

On October 13, 2015, Dr. Nobel reviewed the record and opined that Plaintiff had mild restrictions maintaining social functioning and moderate difficulties maintaining concentration, persistence, or pace. (R. 132). Plaintiff was also moderately limited in his ability to understand, remember, and carry out detailed instructions. (R. 134). Dr. Nobel concluded that Plaintiff was "capable of engaging in simple, unskilled work." (R. 135).

**D. Plaintiff's Testimony**

Plaintiff testified that he worked part-time at ShopRite for the past fifteen years. (R. 105). His job duties included recycling, maintenance and cleaning. (R. 105). At the time of the hearing he worked 20 hours a week for about four days a week. (R. 106). Plaintiff stated that he missed work "once in a blue moon" due to sickness and was otherwise punctual and reliable. (R. 113). When asked if he could handle more than 20 hours of work in a week, Plaintiff stated that he did not know and indicated that 20 hours a week was all his employer would give him. (R. 114-15). He also earned less than he had in previous years because his employer cut back his hours. (R. 116). Plaintiff further testified that he lived in a sober house for recovering alcoholics with five other people. (R. 107-08).

With respect to his medical conditions, Plaintiff testified that he saw his therapist and his doctor once a month. (R. 119). He was prescribed Haldol, Lithium, and Cogentin, which he took for about 17 years. (R. 119). He did not have any side effects from the medication. (R. 120). Plaintiff testified that he used to hear voices telling him to kill himself, but his condition improved with increases in medication. (R. 120).

**E. Vocational Expert's Testimony**

Vocational expert Linda Stein testified at the June 8, 2017 hearing. (R. 124). She stated that Plaintiff's current job was consistent with the work of a supermarket bagger, also known as a courtesy clerk or cart attendant. (R. 124). She testified that the role was at a medium exertional level. (R. 124). The ALJ asked Ms. Stein whether a person who missed two days of work a month due to medical reasons would still be eligible to perform the work of a bagger or any other jobs in the national economy at the unskilled level. (R. 126). Ms. Stein testified that unskilled work typically allows for no more than one absence a month. (R. 126).

9

**F. ALJ Katz's Decision**

In his decision, dated June 14, 2017, ALJ Katz followed the five-step procedure established by the Commissioner for evaluating whether an individual is disabled. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2016, the alleged onset date. (R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder with psychotic features, an intellectual impairment and alcoholism in sustained remission. (R. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.

> Before step four, the ALJ made the following assessment of Plaintiff's RFC:
>
> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can only perform simple, unskilled work tasks that require him to understand, remember and carry out short/simple instructions; and is only able to perform simple, routine, repetitive work tasks.

(R. 23). At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a supermarket worker. (R. 25). In the alternative, the ALJ considered Plaintiff's age, education, work experience, and RFC, and concluded that Plaintiff could perform work that exists in significant numbers in the national economy. (R. 26). For example, relying upon the testimony of the vocational expert, the ALJ stated that Plaintiff could perform the requirements of representative occupations such as general "supermarket-related" work. (R. 27). Accordingly, the ALJ determined that Plaintiff was not disabled.

### G. Evidence Submitted to the Appeals Council

After the ALJ issued his June 14, 2017 decision, Plaintiff submitted additional medical records from St. Joseph's Medical Center for the Appeals Council's review. (R. 31-94). The additional records showed that Plaintiff visited the emergency department on July 3, 2014 for a muscle strain in his back and kidney stones. (R. 45, 49, 55). Plaintiff was discharged the same day in stable and improved condition with a prescription for Naproxen. (R. 62, 64).

## II. DISCUSSION

Plaintiff argues that remand is warranted because (1) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating psychiatrist, and (2) the ALJ erred by evaluating Plaintiff's impairment under listing 12.05 instead of listing 12.04.

### A. Treating Physician Rule

Plaintiff contends that the ALJ committed legal error by not giving any weight to the opinion of Dr. Veselinovic, Plaintiff's treating psychiatrist, without discussing the requisite factors. (Pl. Br. at 12). In response, the Commissioner argues that the ALJ complied with the treating physician rule because Dr. Veselinovic's opinion was not supported by substantial evidence in the record and the ALJ provided "good reasons" for discounting the severe limitations identified by Dr. Veselinovic. (Def. Br. at 24).

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* The ALJ must afford controlling weight to a treating physician's opinion as to the nature and severity of the impairment if it "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). If there is substantial evidence in the record that contradicts or questions the credibility of a treating source's assessment, the ALJ may give that treating source's opinion less deference. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (finding that treating physician's opinions were not entitled to controlling weight because they were not supported by substantial evidence in the record).

Second, if the ALJ does not give controlling weight to a treating source's opinion, the ALJ must consider various factors and provide "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). These "nonexclusive '*Burgess* factors' [include]: '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Estrella*, 925 F.3d at 95-96 (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "[T]o override the opinion of the treating physician . . . the ALJ must explicitly consider" the foregoing factors. *Greek*, 802 F.3d at 375 (alteration in original) (quoting *Selian*, 708 F.3d at 418). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96. If the ALJ does not "explicitly" consider these factors, the case must be remanded unless "a searching review of the record" assures the Court that the ALJ applied "the substance of the treating physician rule." *Id.*

In this case, the ALJ noted that Plaintiff had been "under the care of Dr. Veselinavic [*sic*] for many years, and that [the] psychiatrist submitted a mental residual functional capacity assessment." (R. 24). The ALJ considered both the November 20, 2015 evaluation as well as the May 11, 2017 evaluation. (R. 24-25). However, the ALJ declined to give significant weight to

12

Dr. Veselinovic's opinions because the marked limitations she identified were not substantiated by the other evidence in the record, including Dr. Veselinovic's treatment notes, Dr. Veselinovic's narrative report, and Plaintiff's testimony. (R. 24). The ALJ further explained:

> The undersigned cannot give significant evidentiary weight to the evaluations made by Dr. Veselinovic as they are totally inconsistent with the claimant's testimony concerning his ability to perform basic work activities. That Dr. Veselinovic is a treating physician does not negate the fact that the claimant has been able to work during the last 15 years for ShopRite Supermarkets, where he has performed janitorial type of work, bagging, shopping cart retrieval and a recycling machine. He has been able to consistently and punctually arrive at the jobsite at 9 o'clock in the morning and has been able to take public transportation to and from his apartment to get there. He has been able to live independently and perform routine ADLs such as shopping and meal preparation. He has earned SGA income through calendar year 2016. Significantly, he acknowledged that his medical condition has not changed as of the amended alleged onset date, but he has earned less money since the alleged onset date **only** due to a cutback in his hours imposed upon him by his employer.

(R. 25).

The Court finds that the ALJ provided good reasons for disregarding the extreme findings in Dr. Veselinovic's "check off" evaluation of Plaintiff's mental functional capacity. While the ALJ did not assign a "specific, quantifiable weight" to Dr. Veselinovic's evaluations, this failure is not "dispositive" to the question of whether the ALJ complied with the treating physician rule, especially where, as here, the ALJ's reasoning for discrediting Dr. Veselinovic's opinion is clear from the decision. *Rodriguez v. Colvin*, No. 12 Civ. 3931 (RJS)(RLE), 2014 WL 5038410, at *6 (S.D.N.Y. Sept. 29, 2014). ALJ Katz explicitly considered the requisite factors when assessing Dr. Veselinovic's opinion. He acknowledged that Dr. Veselinovic treated Plaintiff for "many years" and specialized in psychiatry. (R. 24). He also addressed the evidence cited by Dr. Veselinovic in support of her opinion, and the consistency of her opinion with the other evidence in the record. (R. 24-25). The ALJ noted that according to the medical records,

13

Plaintiff was able to control his psychiatric symptoms with consistent medication. (R. 25). *See Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 536 (S.D.N.Y. 2015) (treating physician's opinion was not entitled to controlling weight where her "treatment records . . . consistently show stable mental examination findings . . . contrary to her marked and extreme limitations"). The ALJ also thoroughly discussed and credited Plaintiff's testimony and self-reported account of his abilities, including Plaintiff's testimony that he lived independently in a sober house and could work 20 hours a week and only worked less because his employer reduced his hours. (R. 25). *See Bagley-Reed v. Colvin*, No. 15 Civ. 3851 (JCF), 2016 WL 2605201, at *6 (S.D.N.Y. May 3, 2016) (treating physician's opinion was "undermined by the plaintiff's own reports of activities of daily living"). After considering the relevant factors, it was within the ALJ's discretion to assign limited weight to the extreme non-exertional limitations identified by Dr. Veselinovic, and it is not the position of the Court to reweigh the evidence. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).

Plaintiff maintains that Dr. Veselinovic's opinion was "supported by the substantial evidence in the record, and based upon clinical findings." (Pl. Br. at 14). However, Plaintiff does not specifically identify which medical evidence corroborates Dr. Veselinovic's extreme findings. On the contrary, the objective medical evidence in the record supports the ALJ's findings. Treatment notes show that Plaintiff was stable and compliant with his medications, which effectively managed his condition without side effects.[4] (R. 308-09, 311-12, 314). The results of Plaintiff's mental status examinations

---

[4] There are only a handful of treatment notes from Dr. Veselinovic in the record. An ALJ has "an affirmative obligation to develop a claimant's medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). "However, the duty to develop the record is 'not absolute,' and requires 'the ALJ only to ensure that the record contains sufficient evidence to make a determination.'" *Johnson v. Comm'r of Soc. Sec.*, No. 17 Civ. 5598 (BCM), 2018 WL

were consistently normal, and Plaintiff reported adequate sleep, appetite, and energy level. (R. 308-09, 311-12, 314). Plaintiff had not been hospitalized or received in-patient treatment since 2012, four years prior to his alleged onset date. (R. 298, 305). The ALJ ordered two consultative examinations from Dr. Antiaris two years apart in 2015 and 2017. (R. 291, 321). After each psychiatric evaluation, Dr. Antiaris reported mild findings after conducting mental status examinations and assessed mildly impaired attention, concentration and memory. (R. 321-23). Plaintiff argues that the ALJ misconstrued Dr. Antiaris' opinion by failing to incorporate her conclusion that Plaintiff's symptoms may significantly interfere with his ability to function on a daily basis. (Pl. Br. at 12). However, the ALJ acknowledged Dr. Antiaris' conclusion regarding Plaintiff's ability to function, (R. 24), and he expressly accounted for the limitations identified by Dr. Antiaris by restricting Plaintiff to simple, unskilled work. (R. 23-24).

The Court, therefore, concludes that the ALJ adhered to the treating physician rule in making his findings.

## B. The ALJ's Finding that Plaintiff's Impairments Did Not Meet or Equal a Listed Impairment

Under a theory of presumptive disability, a claimant may be eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The listings specify the criteria for impairments that are considered presumptively disabling. *See* 20 C.F.R. § 404.1525(a). A

---

3650162, at *13 (S.D.N.Y. July 31, 2018) (quoting *Bussi v. Barnhart*, No. 01 Civ. 4330 (GEL), 2003 WL 21283448, at *8 (S.D.N.Y. June 3, 2003)). A court may uphold an ALJ's determination where the record is "adequate to permit an informed finding." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). The Court finds that the ALJ fulfilled his duty to develop the record. The ALJ contacted both Dr. Veselinovic and St. Joseph's Hospital multiple times for records, and he obtained sufficient information to make an informed finding. (R. 131, 326, 335).

claimant may also demonstrate presumptive disability by showing that his impairment is accompanied by symptoms that are equal in severity to those described in a specific listing. *See* 20 C.F.R. § 404.1526(a).

Plaintiff contends that the ALJ committed legal error by evaluating Plaintiff's impairment under listing 12.05, which governs intellectual disorders, as opposed to listing 12.04, which applies to affective disorders such as depression and bipolar disorder. (Pl. Br. at 17-18). In response, the Commissioner maintains that the ALJ adequately considered whether Plaintiff suffered from *any* impairment listed in section 12.00 of Appendix 1 for Mental Disorders and, even if the ALJ did not explicitly cite listing 12.04, his analysis addressed and applied all the relevant elements. (Def. Br. at 29-30).

An ALJ who makes an adverse finding at step three of the sequential analysis must "set forth a specific rationale" to support his conclusion. *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). However, "the absence of an express rationale does not prevent [the Court] from upholding the ALJ's determination" regarding the claimed impairments if "the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Id.*; *see also Solis v. Berryhill*, 692 Fed. App'x 46, 48 (2d Cir. 2017) ("Although the ALJ did not explicitly discuss Listing 11.14, his general conclusion (that [plaintiff] did not meet a listed impairment) is supported by substantial evidence."). In this case, although the ALJ did not explicitly cite listing 12.04 in his analysis, his general conclusion that Plaintiff did not meet any listing under section 12.00 of Appendix 1 for Mental Disorders is supported by substantial evidence, and remand is not required.

Even if the ALJ's failure to provide legal analysis under listing 12.04 was an error, the Court finds such error harmless. A claimant can show that his impairment meets or equals the

16

severity of listing 12.04 by demonstrating that he satisfies the criteria of paragraphs A and B, or that he satisfies the criteria of paragraphs A and C. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. "For a claimant to show that his impairment matches a listing, [he] must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). ALJ Katz expressly considered whether Plaintiff satisfied the requirements of paragraphs B and C, which are necessary elements of demonstrating an impairment under listing 12.04.

The paragraph B requirements are identical for listings 12.04 and 12.05. Under both listings, a claimant must demonstrate an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B); 12.05(B). In this case, the ALJ provided a thorough explanation for why Plaintiff did not satisfy the paragraph B criteria and found that Plaintiff had moderate limitations understanding, remembering, or applying information, no limitations interacting with others, moderate limitations concentrating, persisting, or maintaining pace, and no limitations adapting or managing himself. (R. 20-21). Plaintiff argues that in reaching his decision, the ALJ ignored treating and consultative medical opinions. However, the ALJ explained his findings in detail, relying upon Plaintiff's testimony and examinations from consulting physicians, including the examinations of Dr. Nobel and Dr. Antiaris. (R. 20-21). For the reasons discussed earlier, the ALJ properly assigned limited weight to the extreme restrictions cited by Dr. Veselinovic. *See* Section II.A, *supra*. Accordingly, the Court finds that the ALJ's conclusion that Plaintiff did not satisfy the paragraph B requirements is supported by substantial evidence.

The ALJ also assessed whether Plaintiff satisfied the requirements of paragraph C. (R. 22-23). Under paragraph C, a claimant must have a "serious and persistent" mental disorder as evidenced by both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C). ALJ Katz expressly considered both requirements and found that there was no evidence that Plaintiff met either of the paragraph C requirements. (R. 22-23). Having reviewed the record, the Court finds that substantial evidence also supports the ALJ's finding with respect to satisfaction of the paragraph C criteria.

Because the Court affirms the ALJ's findings under both paragraphs B and C, Plaintiff would not be able to meet his burden under listing 12.04 even if the ALJ had explicitly considered the requirements of paragraph A set forth under listing 12.04. Under these circumstances, remand is not appropriate. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."); *Correa v. Comm'r of Soc. Sec. Admin.*, No. 16 Civ. 01234 (VLB), 2017 WL 4457442, at *9 (D. Conn. Oct. 6, 2017) (ALJ's failure to analyze the applicable listing did not require remand where plaintiff would be unable to meet her burden under said listing).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted. The Clerk is respectfully requested to terminate the pending motions, (Docket Nos. 20-1, 23), and close the case.

Dated: July 22, 2019
       White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge